Dee Davenport v. Commissioner.
Davenport v. Commissioner
Docket No. 37711.
United States Tax Court
1953 Tax Ct. Memo LEXIS 167; 12 T.C.M. (CCH) 860; T.C.M. (RIA) 53258; 2 Oil & Gas Rep. 1491; July 30, 1953
W. L. Matthews, Esq., 1501 Alamo National Building, San Antonio, Tex., for the petitioner. E. G. Sievers, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent has determined a deficiency in income tax for the year 1947 in the amount of $8,541.37. The sole issue is whether there is a tax liability to petitioner for a cash settlement, incident to a redivision of former community property, paid to his ex-wife; the money for the settlement came from former community property. For the companion case see . Findings of Fact The stipulated facts are so found. The petitioner, Dee Davenport, is a resident of the State of Texas. He filed his 1947 cash basis income tax return with *168 the collector of internal revenue for the first district of Texas. Petitioner married Osceola Heard Davenport in 1934, and on April 5, 1944, they were divorced by the District Court of Starr County, Texas. The divorce decree embodied a separate agreement which was "to settle in an amicable way, and without litigation, the community property rights existing between them and to divide said community property in a fair, just and equitable manner." Pursuant to this property settlement a community interest in the balance due from an oil payment was conveyed to a trustee to be held in trust for petitioner. Shortly after the divorce decree was entered, petitioner's former wife became dissatisfied with the settlement. She wrote the oil company which was liable for the oil payment, and she disputed petitioner's right to secure these payments. As a result of this letter, the oil company retained the oil payments until they amounted to $125,159.11 as of December 29, 1947. On September 8, 1947, petitioner's former wife instituted a suit for redivision of the former community property. She alleged that the petitioner made fraudulent representations in procuring the original property settlement. *169 Prior to a trial on the merits, the parties settled their dispute. As a result of the second settlement, petitioner's wife was to receive $40,000 out of the oil payment then held by the oil company. Petitioner was to receive the remainder. On December 29, 1947, a Texas District Court approved the second settlement in a "Final Judgment." Petitioner reported as income in 1947 the sum of $85,159.11. This was the difference between the total oil payment of $125,159.11 and the $40,000 which was paid to his former wife. Respondent in his deficiency notice determined the $40,000 taxable to petitioner in the following manner: Oil payment constructively received
from the oil company
$40,000.00
Allowable cost depletion
14,684.00
Net taxable income
$25,316.00
Opinion The issue in this case is whether $40,000 accumulated from an oil payment and actually paid to petitioner's former wife, Osceola Heard Davenport, is taxable to petitioner. In a companion case, , respondent first determined that this same sum was taxable income to her, but he "took the protective measure" to make a like determination *170 against the petitioner. Here the respondent contends that the $40,000 was constructively received by petitioner in 1947, and therefore is his taxable income. On the other hand, petitioner maintains that he never received the money, either in fact or constructively. There is no dispute that petitioner did not actually receive the money. Prior to the settlement agreement, as embodied in the divorce decree, the oil payment was community property. As such property, petitioner and his wife each had a vested one-half interest in the property. See ; . To them as a community, the oil payment would have been community income. It is only proper and reasonable, after a community property settlement, that each of the members of the separated community report as income that part of the oil payment received by him or her. Neither reported the $40,000 as income. However, petitioner reported as 1947 income the amount of the oil payment he received under the second settlement agreement. This was $85,159.11. Since Osceola Heard Davenport received the $40,000 as her share of the oil payment, it should not be taxable *171 income to petitioner. The fact that the proceeds of the oil payment were held and accumulated as cash during the dispute between husband and former wife, and was finally paid to her in 1947, does not distinguish the oil payment from any other property she received in 1944 under the original decree. Under Texas law, a wife who has been defrauded in the distribution of community assets may sue to set aside the judgment dividing the property. See ; . In such a suit she only seeks to recover her just share of the community assets; a settlement under the suit gives her property of the same nature as sought in the suit. Osceola Heard Davenport sought a redivision of community property, therefore she received community property as a result of the settlement. Respondent's theory of constructive receipt is not applicable to the petitioner. The money was never reduced to petitioner's possession, nor was it credited to his account so that he might use it as his own. See Regulations 111, section 29.42-2. Respondent recognizes that there was no constructive receipt prior to December 29, 1947. That was *172 the date of the Texas District Court's "Final Judgment" which provided that petitioner's former wife was to receive $40,000, and was to be paid out of the oil payment. This is not a situation where the theory of constructive receipt should be applied. See , affd., . The petitioner is sustained. However, because there were other adjustments in the deficiency notice, a Rule 50 computation will be necessary. Decision will be entered under Rule 50.